# EXHIBIT X

DocuSign Envelope ID: 438A37CC-1D5A-4729-BDF4-687E02A19D4B

## MEMORANDUM OF UNDERSTANDING

This Data Sharing Memorandum of Understanding (hereinafter "**MOU**") is entered into by and between Flock Group, Inc. with a place of business at 2588 Winslow Drive, Atlanta, GA 30305 ("**Flock**") and the Ohio State Highway Patrol with a place of business at 1970 West Broad Street, Columbus, Ohio 43223 ("**Agency**") (each a "**Party**", and together, the "**Parties**").

Whereas, Agency desires to access Flock's technology platform and Flock Safety dashboard (together, the "**Flock Service**") for investigative purposes, in order to view and search photos and videos recorded by Flock ("**Recordings**") which are stored for no longer than thirty (30) days, utilizing its software for automatic license plate detection;

Whereas, Flock desires to share such Recordings and supplemental data with Agency, and allow Flock customers to share such Recordings and supplemental data with Agency, pursuant to the following terms and conditions:

1. **Purpose.** To allow the Agency to utilize the Flock Services for the following purpose: to gain awareness with respect to the communities for which they serve to protect and facilitate investigations (the "Purpose").

2. **Access Rights to Flock Services.** Subject to the terms and conditions contained in this MOU, Flock hereby grants to Agency a non-exclusive, non-transferable right to access the features and functions of the Flock Service during the Term (as defined below), solely for use by Authorized Users in accordance with the terms and conditions herein. For purposes of this MOU, "Authorized Users" will mean employees, agents, or officers of Agency accessing or using the Flock Services for the Purpose. Agency acknowledges and agrees that, as between Agency and Flock, Agency shall be responsible for all acts and omissions of Authorized Users, and any act or omission by an Authorized User which would constitute a breach of this MOU, shall be deemed a breach of this MOU by Agency. Agency shall undertake reasonable efforts to make all Authorized Users aware of the provisions of this MOU as applicable to such Authorized User's use of the Flock Service, and shall cause Authorized Users to comply with such provisions.

3. **Restrictions on Use.** Agency will not, and will not permit any Authorized Users or any third party to, (i) copy or duplicate any of the Flock Service; (ii) decompile, disassemble, reverse engineer or otherwise attempt to obtain or perceive the source code from which any software component of any of the Flock Service is compiled or interpreted; (iii) modify, alter, or tamper with any of the Flock Service, or create any derivative product from any of the foregoing; (iv) interfere or attempt to interfere in any manner with the functionality or proper working of any of the Flock Service; (v) remove, obscure, or alter any notice of any intellectual property or proprietary right appearing on or contained within any of the Flock Service; or (vi) assign, sublicense, sell, resell, lease, rent or otherwise transfer or convey, or pledge as security or otherwise encumber, Agency's rights under Sections 2. Agency may only access Recordings and Flock Service to perform the Purpose, as described in Section 1. Agency shall not use the Flock Service in any manner not permitted by appropriate governing Federal and State

1

DocuSign Envelope ID: 438A37CC-1D5A-4729-BDF4-887E02A19D4B

regulations or laws; Agency represents and warrants that, in receiving access to Flock Services, such Recordings and supplemental data shall be used solely for purposes authorized by law and described in this MOU.

4. **Ownership.** As between the Parties, subject to the rights granted in this MOU, Flock and its licensors retain all right, title and interest in and to the Flock Service, and its components and any Recordings or data provided by Flock through the Flock Service, and Agency acknowledges that it neither owns nor acquires any additional rights in and to the foregoing not expressly granted by this MOU. Agency further acknowledges that Flock retains the right to use the foregoing for any purpose in Flock's sole discretion. There are no implied rights.

5. **Warranty.** Flock and its licensors make no express or implied warranty as to the conditions of the Recordings, or fitness for a particular research, data, investigative purpose or resulting actions or omissions resulting from Recordings and supplemental data obtained by Agency through the use of Flock Services.

6. **Financial Implications to Agency.** No financial commitment by Agency is required to access the Flock Services or Recordings.

7. **Term; Termination.**

   A. **Term.** This MOU will commence once executed by both parties and shall continue for a period of five (5) years. The MOU may be renewed for an additional five (5) years upon the mutual, written agreement of both Parties.

   B. **Termination.** Prior to expiration of the Term, Flock may terminate this MOU for its convenience, and in its sole discretion, by providing Agency thirty (30) days prior written notice of termination. Agency may terminate this MOU for its convenience, and in its sole discretion, by providing Flock thirty (30) days prior written notice of termination. Either party may terminate this MOU upon written notice if the other party has breached a material term of this MOU and has not cured such breach within thirty (30) days of receipt of notice from the non-breaching party specifying the breach. Upon termination of this MOU, Agency will immediately cease all use of Flock Services. This MOU is subject to termination without written notice after expiration of the Term.

8. **Location.** This MOU allows other Flock customers located in/within the State of Ohio the ability to share their Recordings with Agency.

9. **Indemnification.** Each Party to this MOU shall assume the responsibility and liability for the acts and omissions of its own employees, deputies, officers, or agents, in connection with the performance of their official duties under this MOU. For tort liability purposes, no participating Party shall be considered the agent of the other participating Party. Each Party to this MOU shall be liable (if at all) only for the torts of its own officers, agents, or employees that occur within the scope of their official duties. Under no circumstances shall this MOU be interpreted to create a partnership or agency relationship between the Parties.

DocuSign Envelope ID: 438A37CC-1D5A-4729-BDF4-887E02A19D4B

10. Limitation of Liability.

**A. Limitation on Direct Damages. TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, IN NO EVENT SHALL FLOCK, ITS OFFICERS, DIRECTORS, AGENTS, EMPLOYEES OR REPRESENTATIVES BE LIABLE FOR ANY AMOUNT GREATER THAN THE FEES PAID TO FLOCK UNDER THIS MOU, OR $100 IN UNITED STATES CURRENCY, WHICHEVER IS GREATER, WITHOUT REGARD TO WHETHER SUCH CLAIM IS BASED IN CONTRACT, TORT (INCLUDING NEGLIGENCE OR STRICT LIABILITY), PRODUCT LIABILITY OR OTHERWISE.**

**B. Waiver of Consequential Damages. IN NO EVENT SHALL FLOCK OR ITS LICENSORS OR SUPPLIERS BE LIABLE FOR ANY INDIRECT, SPECIAL, PUNITIVE OR CONSEQUENTIAL DAMAGES, INCLUDING, WITHOUT LIMITATION, LOSS OF DATA OR LOSS OF PROFITS, WITHOUT REGARD TO WHETHER SUCH CLAIM IS BASED IN CONTRACT, TORT (INCLUDING NEGLIGENCE), PRODUCT LIABILITY OR OTHERWISE, EVEN IF FLOCK HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.**

11. **Confidentiality**

A. **Obligations.** During the performance of services and Agency's use of the Flock Service under this Agreement it may be necessary for a party to provide the other with certain information considered to be proprietary or confidential by the disclosing party. The disclosure of such confidential information shall be subject to the following terms and conditions.

i. The term "Agency Confidential Information" shall mean any material, data, systems, procedures and other information of or with respect to Agency that is not be accessible or known to the general public, including information concerning its hardware, software, business plans or opportunities, business strategies, finances, employees, and third-party proprietary or other information that Agency treats as confidential. Flock shall not use, publish or divulge any Agency Confidential Information except (i) in connection with Flock's provision of Software and services pursuant to this Agreement, (ii) to Flock's officers, directors, employees, agents and contractors who need to know such information to enable Flock to provide Software and services pursuant to this Agreement, or (iii) with the prior written consent of Agency, which consent Agency may withhold in its sole discretion.

ii. The term "Flock Confidential Information" means any material, data, systems, procedures and other information of or with respect to Flock that is not accessible to or known to the general public, including, without limitation, the software, object code, source code, formulae, algorithms, financial data, clients, employees, software development plans, software support third-party proprietary or other information that Flock treats as confidential. Agency shall not use, publish or divulge any Flock Confidential Information except (i) to its employees, agents and officers who need to know such information to enable Agency to use the Flock Services,

or (ii) with the prior written consent of Flock, which consent Flock may withhold in its sole discretion.

DocuSign Envelope ID: 438A37CC-1D5A-4729-BDF4-887E02A19D4B

iii. Each party shall protect the other's confidential information with the same degree of care normally used to protect its own similar confidential information, but in no event less than that degree of care that a reasonably prudent business person would use to protect such information. The obligations of each party to protect confidential information received from the other party shall not apply to information that is publicly known or becomes publicly known through no act or failure to act on the part of the recipient. All provisions of this MOU concerning the Confidentiality section herein, shall survive any termination of this MOU.

B. **Exclusions.** Confidential Information shall not include any information that is (i) already known to the receiving party at the time of the disclosure; (ii) publicly known at the time of the disclosure or becomes publicly known through no wrongful act or failure of the receiving party; (iii) subsequently disclosed to the receiving party on a non-confidential basis by a third-party not having a confidential relationship with the other party hereto that rightfully acquired such information; or (iv) communicated to a third party by the receiving party with the express written consent of the other party hereto. A disclosure of Confidential Information that is legally compelled to be disclosed pursuant to a subpoena, summons, order or other judicial or governmental process, the Freedom of Information Act, or Ohio Revised Code section 149.43 shall not be considered a breach of this MOU; provided the receiving party provides prompt notice of any such subpoena, order, or the like to the other party so that such party will have the opportunity to obtain a protective order or otherwise oppose the disclosure.

12. **Entire Agreement.** This MOU is complete and contains the entire understanding between the Parties relating to the sharing of Recordings and Confidential Data by and between Flock and Agency. This MOU supersedes any and all other agreements between the Parties. This Agreement is non-assignable by both Parties.

13. **Severability.** Nothing is this MOU is intended to conflict with or violate State or Federal laws, regulations, policies, etc. If a term or provision of this MOU is inconsistent with a law or authority, then that term or provision shall be invalid, but the remaining terms and provisions shall remain in full force and effect. If any provision of this MOU is found to be unenforceable, unlawful, or void, the provision shall be deemed severable from the MOU and shall not affect the validity of the remaining provisions.

14. **Miscellaneous.** All notices, requests, demands, or other communications required or permitted to be given hereunder must be in writing and must be addressed to the parties at their respective addresses set forth below and shall be deemed to have been duly given when (a) delivered in person; (b) sent by facsimile transmission To the facsimile number below and indicating receipt at the facsimile number where sent; (c) one (1) business day after being deposited with a reputable overnight air courier service; or (d) three (3) business days after being deposited with the United States Postal Service, for delivery by certified or registered mail, postage pre-paid and return receipt requested. This MOU; its subject matter, terms, and conditions; and any disputes or claims arising out of or in connection with the MOU shall be governed by the laws of the State of Ohio. The parties agree that the United Nations

DocuSign Envelope ID: 438A37CC-1D5A-4729-8DF4-887E02A19D4B

Convention for the International Sale of Goods is excluded in its entirety from this MOU.

IN WITNESS WHEREOF, Flock and the Agency have caused this MOU to be signed on the date set forth below and be effective on the last date specified below.

| Flock Group Inc | Agency Name: |
|---|---|
| By: *Mark Smith* | By: *Thomas J. Stickrath/ksy* |
| Name: Mark Smith | Name: Thomas J. Stickrath |
| Title: General Counsel | Title: Director |
| Date: 6/28/2022 | Date: 6/29/2022 |