PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL SMITH, | ) | |
| | ) | CASE NO. 5:23-CV-2198 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| FLOCK SAFETY, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | [ Resolving ECF Nos. 7, 11, 12, 14, 22, |
| | ) | 26, 31] |

Plaintiff Michael Smith filed this action *pro se* against Defendant Flock Safety, a

Delaware Corporation with its principal place of business in Atlanta, Georgia.  ECF No. 21 at

PageID #: 569.  Plaintiff alleges that this lawsuit arises from a traffic stop initiated by the

Jackson Township Police Department, based on an alert issued by a license plate recognition

camera sold by Defendant.  ECF No. 21 at PageID #: 577.

**I.  Procedural History**

Plaintiff first brought this action against Jackson Township and the four Jackson

Township police officers who conducted the traffic stop.  *See* Complaint, *Smith v. Haddadin*, No.

5:23 CV 1171 (N.D. Ohio Nov. 28, 2023) (Brennan, J.).  The parties settled that case on

November 8, 2023.  *Smith v. Haddadin*, No. 5:23 CV 1171 (N.D. Ohio Nov. 28, 2023).  Five

days later, on November 13, 2023, Plaintiff filed this action against Defendant Flock Safety, the

seller and service provider of the license plate recognition camera.

(5:23cv2198)

Initially, Defendant moved to dismiss the Complaint under Federal Civil Procedure Rule 12(b)(6), asserting that it is not a "state actor" for purposes of 42 U.S.C. § 1983; the camera was not defective for a products liability claim; and it did not disseminate false information to third parties to support defamation claims.  ECF No. 7.  In response to the motion to dismiss, Plaintiff filed a First Amended Complaint (ECF No. 10) seeking to correct the deficiencies Defendant highlighted in its motion.  Defendant then filed a second motion to dismiss (ECF No. 11), arguing that Plaintiff's Amended Complaint suffers from the same fatal defects as his original Complaint.  In response to the second motion to dismiss, Plaintiff filed a Second Amended Complaint.  ECF No. 21.  Defendant then filed a motion to dismiss the Second Amended Complaint (ECF No. 22), claiming that Plaintiff has still failed to allege claims upon which relief may be granted.  ECF No. 22 at PageID #: 837-838.

Federal Civil Procedure Rule 15(a) provides that a party may amend his pleading once as a matter of course.  Thereafter, a pleading can only be amended by written agreement of the parties or with leave of court.  Defendant explains that Plaintiff filed his Second Amended Complaint after Defendant gave permission, but that Defendant's permission to file the Second Amended Complaint was given based on the misrepresentation that Plaintiff was removing irrelevant figures and words.  ECF No. 22 at PageID #: 837.  "Instead of removing irrelevant information, [Plaintiff] added more than 250 paragraphs and 15 exhibits to his Complaint."  ECF No. 22 at PageID #: 837.  Because Defendant did not give Plaintiff permission to amend his Second Amended Complaint as filed, Defendant claims Plaintiff's Second Amended Complaint is improvidently filed and also  seeks dismissal or that basis.  *See* ECF No. 22.

(5:23cv2198)

Plaintiff's Amended Complaints supersede his original Complaint.  *See Kellom v. Quinn*, 86 F.4th 288, 292 (6th Cir. 2023) ("An amended complaint 'supersedes an earlier complaint for all purposes.") (citing *Calhon v. Bergh*, 769 F.3d 409, 410 (6th Cir. 2014)).  Therefore, the following analysis will focus primarily on the motion to dismiss Plaintiff's Second Amended Complaint.  In this writing, the Court also resolves Plaintiff's other pending motions.

## II.  Allegations and Prayer

As indicated above, Defendant is the seller and service provider of license plate recognition ("LPR") cameras, marketed primarily but not exclusively, to public safety organizations.  ECF No. 21 at PageID #: 572, 577.  The LPR cameras capture only license plates and vehicle information.  ECF No. 21 at PageID #: 637.  They do not attempt to capture faces or utilize facial recognition software.  ECF No. 21 at PageID #: 637; ECF No. 21-3 at PageID #: 681.  The data collected by the camera is fully owned by the purchaser.  ECF No. 21 at PageID #: 637.  Only authorized users can access the system and every search requires a search reason, which is collected in a publicly available audit.  ECF No. 21 at PageID #: 637.  No unauthorized users, including Defendant's employees, have access to the footage.  ECF No. 21 at PageID #: 637.

Defendant's LPR cameras may also be connected to the FBI's National Crime Information Center "Hot List."  ECF No. 21-34 at PageID #: 803.  Defendant's LPR camera system matches license and vehicle information that it collects with license and vehicle information on the "Hot List."  ECF No. 21-34 at PageID #: 803.  If a match is detected, Defendant's system then issues a notification alert to local law enforcement that a vehicle on the

(5:23cv2198)

"Hot List" is in the area.  ECF No. 21-34 at PageID #: 803.  Defendant does not generate the information that triggers the alert; it only matches license plate images with information already entered into the system.  ECF No. 21-34 at PageID #: 803.

On February 13, 2023, the Cleveland Police Department opened an investigation concerning a missing juvenile.  ECF No. 22 at PageID #: 841 (citing Second Amended Complaint, *Smith v. Haddadin*, No. 5:23 CV 1171 (N.D. Ohio Nov. 28, 2023)).  That investigation involved coordination among multiple law enforcement agencies and resulted in the Cleveland Police Department entering Plaintiff's license plate number and vehicle description on the "Hot List."  ECF No. 22 at PageID #: 841 (citing Motion for Judgment on the Pleadings, *Smith v. Haddadin*, No. 5:23 CV 1171 (N.D. Ohio Oct. 3, 2023)).  The missing juvenile was located at an area hospital on February 23, 2023, and the Cleveland Police Department terminated the investigation.  ECF No. 22 at PageID #: 841.

Two weeks later, Defendant's LPR camera captured Plaintiff's vehicle's license plate and matched it to information on the "Hot List."  ECF No. 22 at PageID #: 841.  The system issued a notification which prompted Jackson Township Police to initiate a traffic stop of Plaintiff's vehicle.  ECF No. 22 at PageID #: 841.  After the stop, the officers contacted the Cleveland Police Department to confirm the information on the alert.  ECF No. 22 at PageID #: 841.  The police learned that the missing juvenile had been found and allowed Plaintiff to leave the scene without incident. ECF No. 22 at PageID #: 841 (citing Second Amended Complaint, *Smith v. Haddadin*, No. 5:23 CV 1171 (N.D. Ohio Nov. 28, 2023)).  The police report shows that Plaintiff

(5:23cv2198)

was cleared by 5:18 a.m.  ECF No. 21-11 (attaching Stark County Police Report as Exhibit K).

In other words, the interaction lasted less than one hour.

In response to this law enforcement interaction, Plaintiff asserts seventeen claims for

relief in Nineteen Counts.  In Count One, he asserts a claim for negligence, claiming Defendant

was negligent in failing to remove information from the "Hot List" notification.  ECF No. 21 at

PageID #: 654.  In Count Two, Plaintiff asserts a claim for design defects under Ohio Revised

Code § 2307.75.  He contends Defendant's camera was not safe for its intended use due to its

defective design.  ECF No. 21 at PageID #: 654.  In Count Three, Plaintiff alleges that

Defendant's camera was not safe for its intended use due to a manufacturer's defect, in violation

of Ohio Revised Code § 2307.74, codifying strict products liability.   ECF No. 21 at Page ID #:

655.  In Count Four, Plaintiff asserts that Defendant failed to warn him that the camera was

unsafe for its intended use, in violation of Ohio Revised Code § 2307.76, codifying strict liability

for failure to warn.  ECF No. 21 at PageID #: 656.  In Count Five, Plaintiff asserts a cause of

action for nonconformance with representations, in violation of Ohio Revised Code §2307.77.

ECF No. 21 at PageID #: 656.  He claims that Defendant represented to him and the public that

its camera was safe for use in reading license plates and the data transmitted was not defamatory

or slanderous.  Plaintiff alleges that these representations caused him injuries and damages.  ECF

No. 21 at PageID #: 657.  In Count Six, Plaintiff alleges a claim for libel *per se*,  ECF No. 21 at

PageID #: 657, contending Defendant "published the statements with knowledge of their falsity

or reckless disregard of their falsity."  ECF No. 21 at PageID #: 657.  He further asserts that

Defendant published the information with the intent to harm his reputation and career,

(5:23cv2198)

demonstrating malice. ECF No. 21 at PageID #: 658. In Count Seven, Plaintiff asserts a claim

for false light invasion of privacy. ECF No. 21 at PageID #: 658. He claims Defendant intended

to publish false information and contends their knowledge of its falsity is demonstrated by the

fact that Defendant does not conduct an independent investigation of the truth of the underlying

criminal investigation. ECF No. 21 at PageID #: 659. He concludes the alert placed him in a

false light and caused him to be detained in the traffic stop. ECF No. 21 at PageID #: 659. In

Count Eight, Plaintiff asserts a claim for intentional infliction of emotional distress, alleging that

Defendant intended to cause him severe and serious emotional distress when they allowed false

information to be conveyed in the alert. ECF No. 21 at PageID #: 659. In Count Nine, Plaintiff

asserts a claim for negligent infliction of emotional distress. ECF No. 21 at PageID #: 660. This

claim is similar to his claim for intentional infliction of emotional distress with a substitution of

negligence as the *mens rea*. In Count Ten, Plaintiff asserts a claim for misappropriate of his

name and likeness, ECF No. 21 at PageID #: 661, *via* numerous photographs. In Count Eleven,

Plaintiff asserts a claim for defamation *per se*. ECF No. 21 at PageID #: 662. He alleges

Defendant knew the information in the alert was false or acted with reckless indifference to the

truth when it published the information in the alert. ECF No. 21 at PageID #: 662. He contends

the information constitutes defamation *per se* because it accused him of conduct incompatible

with his business, trade, position, or office. ECF No. 21 at PageID #: 662. In Count Twelve,

Plaintiff contends Defendant committed the tort of defamation *per quod*. ECF No. 21 at PageID

#: 662. This claim contains confesses its reliance on extrinsic facts that "prov[e] the existence

of actual/special damages to [his] reputation and business." ECF No. 21 at PageID #: 662.

(5:23cv2198)

(Plaintiff skips Count Thirteen and Fourteen.)  In Count Fifteen, Plaintiff asserts a claim under
42 U.S.C. § 1983, alleging that Defendant violated his Fourth Amendment right to be free from
unreasonable seizures.  ECF No. 21 at PageID #: 663.  Count Sixteen alleges claims under 42
U.S.C. § 1983, due to the violation of Plaintiff's Fifth and Fourteenth Amendment rights.  ECF
No. 21 at PageID #: 665.  Plaintiff claims Defendant violated his right to due process under the
Fifth and Fourteenth Amendments by detaining him without a fair process to challenge the
accuracy of that information before the deprivation occurred.  ECF No. 21 at PageID #: 665-666.
In Count Seventeen, Plaintiff brings an unjust enrichment claim alleging Defendant unlawfully
obtained compensation for access to Plaintiff's data and retained the data without compensating
Plaintiff.  ECF No. 21 at PageID #: 666.  In Count Eighteen, Plaintiff asserts a fraudulent
concealment claim alleging that Defendant knew it was selling Plaintiff's data and information,
so Defendant had a duty to disclose that it was manufacturing, distributing, and selling products
that would defame Plaintiff.  ECF No. 21 at PageID #: 667.  In Count Nineteen, Plaintiff alleges
a claim of conversion, writing that Defendant unlawfully collected, used, and exercised dominion
and control over Plaintiff's personal and private information without authorization.  ECF No. 21
at PageID #: 669.

As remedy, Plaintiff seeks declaratory judgment, injunctive relief, compensatory and
punitive damages, in addition to other relief deemed equitable by the Court.  (ECF No. 21 at
PageID #: 669-671).

(5:23cv2198)

### III.  Standard for Dismissal

When deciding a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the function of the

Court is to test the legal sufficiency of the complaint.  *See Mayer v. Mulod*, 988 F.2d 635, 638

(6th Cir. 1993).  The Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and

in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009) clarified the law regarding what a plaintiff

must plead in order to survive a motion to dismiss under Rule 12(b)(6).

When determining whether the Plaintiff has stated a claim upon which relief can be

granted, the Court must construe the Complaint in the light most favorable to the Plaintiff, accept

all factual allegations as true, and determine whether the Complaint contains "enough facts to

state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555.  Plaintiff's

obligation to provide the grounds for relief "requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Id.*  Although a Complaint

need not contain detailed factual allegations, its "factual allegations must be enough to raise a

right to relief above the speculative level on the assumption that all the allegations in the

Complaint are true." *Id.*  The Court is "not bound to accept as true a legal conclusion couched as

a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Court in *Iqbal*, further explains the "plausibility" requirement, stating that "a claim

has facial plausibility when the [p]laintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

678.  Furthermore, "the plausibility standard is not akin to a 'probability requirement,' but it asks

for more than a sheer possibility that a defendant acted unlawfully." *Id.*  This determination is a

8

(5:23cv2198)

"context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The Court may consider allegations contained in the complaint, as well as exhibits attached to or otherwise incorporated in the Complaint, all without converting a motion to dismiss to a motion for summary judgment. FED. R. CIV. P. 10(c); *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

## IV.  Law and Analysis

### A.      42 U.S.C. § 1983 (Counts Fifteen and Sixteen)

As an initial matter, Plaintiff fails to state a claim against Defendant under 42 U.S.C. § 1983. To establish a *prima facie* case under 42 U.S.C. § 1983, Plaintiff must allege that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Generally to be considered to have acted "under color of state law," the defendant must be a state or local government entity, official or employee. Defendant, in this case, is a private party, not a governmental entity. The issue of whether a private entity is "a state actor" or "acted under color of state law" is a question of law for the Court's determination. *Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002).

For a private entity to "act under color of state law" for purposes of § 1983, "its actions [must] so approximate the state action that they may be fairly attributed to the state." *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000). The Sixth Circuit has recognized as many as four tests to aid courts in determining whether challenged conduct is fairly attributable to the State: (1) the public function test; (2) the state compulsion test; (3) the symbiotic relationship or

(5:23cv2198)

nexus test; and (4) the entwinement test. *Vistein v. Am. Registry of Radiologic Technologists*, 342 Fed.Appx. 113, 127 (6th Cir.2009) (citing *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir.1992); *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 298 (2001)). Plaintiff appears to base his allegations on the substantial nexus test.[1] ECF No. 21 at PageID #: 594-629.

Under the substantial nexus test, a private party's conduct constitutes state action when there is such a sufficiently close nexus between the state and the challenged action of the private entity that the actions of the private entity may be fairly treated as that of the state itself. *Wolotsky*, 960 F.2d at 1335. Plaintiff asks the Court to hold Defendant liable as a state actor based on allegations that Defendant markets its products to law enforcement agencies; and by attributing actions to Defendant that it did not perform. ECF No. 21 at PageID #: 594-629. A substantial nexus is not established just because a private company accepts and performs public contracts. *Rendell–Baker v. Kohn*, 457 U.S. 830, 841 (1982); *see Wolotsky*, 960 F.2d at 1336 (clarifying that "[a]cts of private contractors do not become the acts of the government by reason

---

[1] Plaintiff does not allege that Defendant's actions are *exclusively* reserved to the state nor that Defendant was acting under the state's *coercive* power. To satisfy the requirements of entwinement test, Plaintiff must show that Defendant is "entwined with governmental policies" or that the government is "entwined in [the private entity's] management or control." *See Vistein*, 342 Fed.Appx. at 128 (quoting *Brentwood*, 531 U.S. at 296). "The crucial inquiry under the *entwinement* test is whether the 'nominally private character' of the private entity 'is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings [such that] there is no substantial reason to claim unfairness in applying constitutional standards to it.' " *Vistein*, 342 Fed.Appx. at 128 (quoting *Brentwood*, 531 U.S. at 298). Plaintiff has failed to establish entwinement. Defendant merely matched data provided to captured images. While, as ruled herein, Plaintiff also fails to establish substantial nexus, that test most closely matches his allegations.

10

(5:23cv2198)

of their significant or even total engagement in performing public contracts") (citing

*Rendell–Baker*, 457 U.S. at 840-841).  This is true even if the private company markets its

products exclusively to public entities.  Defendant's business relationships with various law

enforcement agencies, alone, is not sufficient to meet the substantial nexus test.  Contrary to

Plaintiff's assertion, Defendant does not create the information on the "Hot List."  ECF No. 21 at

PageID #: 586.  Defendant merely captures images of vehicles and license plates and matches it

against information that law enforcement agencies have flagged for alert notification.  ECF No.

21-34 at PageID #: 803.  After Defendant reports a match to law enforcement, it has no further

involvement.  ECF No. 22 at PageID #: 837.  Against this backdrop, Plaintiff fails to allege

sufficient facts to suggest Defendant can be considered a state actor for purposes of § 1983.

Moreover, even if Defendant could be considered a state actor, Plaintiff failed to allege

facts supporting a plausible claim that Defendant violated his Fourth, Fifth, or Fourteenth[2]

Amendment rights.  Plaintiff claims his traffic stop constituted a seizure triggering Fourth

Amendment protections.  ECF No. 21 at PageID #: 663-665.  "The Fourth Amendment applies to

all seizures of the person, including seizures that involve only a brief detention short of

traditional arrest." *United States v. Brignoni–Ponce*, 422 U.S. 873, 878 (1975); *Terry v. Ohio*,

392 U.S. 1, 16-19 (1968)).  Defendant, however, did not detain Smith.  The Jackson Township

Police executed the traffic stop based on a reasonable suspicion of criminal activity.  ECF No.

21-11 at PageID #: 709-711.  A police officer may effect a traffic stop if the officer "possess[es]

---

[2]  Plaintiff pleads the Fourteenth Amendment in Count 16 (with the Fifth Amendment) but not in Count 15 (Fourth Amendment only).  The Court, reading liberally, considers the Fourteenth Amendment as to both counts.

(5:23cv2198)

either probable cause of a civil infraction or reasonable suspicion of criminal activity." *United States v. Noble*, 762 F.3d 509, 518 (6th Cir. 2014)*; United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012) (citing *Gaddis ex rel. Gaddis v. Redford Twp.*, 364 F.3d 763, 771 n6 (6th Cir. 2004)).  The question of whether the Jackson Township police acted reasonably when they briefly detained Plaintiff does not extend to Defendant.

Plaintiff's Fifth Amendment due process claim against Defendant is similar to his Fourth Amendment claim.  He states that Defendant detained him without a fair process to challenge the accuracy of the information before the deprivation occurred.  ECF No. 21 at PageID #: 665-666. Once again, Defendant did not detain Plaintiff and was not involved in the criminal investigation. ECF No. 21-11 at PageID #: 709-711.  Furthermore, the Constitution does not guarantee that only the guilty will be detained, arrested, or charged in a criminal complaint.  *Baker v. McCollan*, 443 U.S. 137, 145 (1979).  The criminal justice system has several procedural steps that occur both before and after arrest to ensure that the accused has notice of charges and an opportunity to be heard.  In this case, the police immediately contacted Cleveland police and resolved the issue on the scene of the traffic stop.  ECF No. 21-11 at PageID #: 710.  The police briefly detained Plaintiff and allowed him to leave without further incident.  ECF No. 21-11 at PageID #: 709-711; ECF No. 22 at PageID #: 841.  Because Plaintiff fails to state a claim for denial of constitutional rights under the Fourth, Fifth, and Fourteenth Amendments, the Court dismisses Counts Fifteen and Sixteen.

**B.     Products Liability (Counts Two through Five)**

Plaintiff also fails to state a claim under the Ohio Products Liability statutes he cites.  The

(5:23cv2198)

crux of his argument in Counts Two and Three is that the Defendant's cameras are defective because they did not have the capability to perform additional research, verify the information law enforcement agencies put on the "Hot List," and contain basic data validation software. ECF No. 21 at PageID #: 630. In Count Two, he asserts a claim for Design Defects under Ohio Revised Code § 2307.75, asserting Defendant's camera was not safe for its intended use due to its design. ECF No. 21 at PageID #: 654. In Count Three, he asserts a similar claim, stating that the camera was not safe for its intended use due to a manufacturer's defect in violation of Ohio Revised Code § 2307.74. ECF No. 21 at Page ID #: 655.

Under the Ohio Product Liability Act, a "product is defective in manufacture or construction if, when it left the control of its manufacturer, it deviated in a material way from the design specifications, formula, or performance standards of the manufacturer, or from otherwise identical units manufactured to the same design specifications, formula, or performance standards." Ohio Rev. Code § 2307.74. Plaintiff's Count Three fails because he has not alleged facts suggesting that Defendant's camera that captured the image of his vehicle was materially different from the product's design specifications or that it was materially different from otherwise identical units that were manufactured under this same design.

The Ohio Product Liability Act defines a product as defective in design or formulation "if, at the time it left the control of its manufacturer, the foreseeable risks associated with its design or formulation ... exceeded the benefits associated with that design or formulation ...." Ohio Rev. Code § 2307.75(A). To plead a design defect claim, a complaint must allege: "(1) the existence of a defect in the product at issue, (2) that the defect existed at the time the product left

(5:23cv2198)

the hands of the manufacturer, and (3) the defect was the direct and proximate cause of the Plaintiff's injury." *Tomlin v. Smith & Nephew, Inc.*, No. 3:19-cv-354, 2020 WL 5230830, at *4 (S.D. Ohio Sep. 2, 2020) (quoting *Jones v. Staübli Motor Sports Div. of Staübli Am. Corp.*, 897 F. Supp. 2d 599, 607 (S.D. Ohio 2012)).  Count Two also fails because Plaintiff has not alleged facts that plausibly support a finding that the product was defective.  Rather, Defendant's camera appears to have functioned as was intended.  Plaintiff's issue with the product is that it did not do more than it was designed to do.  ECF No. 21 at PageID #: 630.  That does not make the product defective.

Moreover, Defendant's camera did not cause the injury of which Plaintiff complains. Defendant's camera did not create the "Hot List" or input the data.  It merely transmitted the alert to local law enforcement.  Law enforcement personnel have the responsibility to screen the information and act on it, if they see fit.  Inaccurate information entered by law enforcement does not equate to a defect in Defendant's product.

Plaintiff's failure to warn claims are similarly without merit.  In Count Four, Plaintiff asserts that Defendant failed to warn him that the camera was unsafe for its intended use in violation of Ohio Revised Code § 2307.76.  ECF No. 21 at PageID #: 656.  In Count Five, Plaintiff asserts a cause of action for nonconformance with representations in violation of Ohio Revised Code §2307.77.  ECF No. 21 at PageID #: 656.  He claims that Defendant represented to him that its camera was safe for use in reading license plates and the data transmitted would not be defamatory or slanderous.  Plaintiff states he relied on these representations to his detriment. ECF No. 21 at PageID #: 657.

14

(5:23cv2198)

The flaw in both of these claims is that Defendant did not owe Plaintiff a duty to warn him regarding the accuracy of the data, nor did Defendant have any communication with Plaintiff about the character and quality of its product.  Plaintiff was not the purchaser of the camera nor was he a user of the product.  The agencies purchasing Defendant's cameras would be the recipients of any warnings if such warnings were required.  Defendant did not make any representations to Plaintiff.

Accordingly, the Court dismisses Counts Two, Three, Four, and Five.

**C.     Common Law Tort Claims (Counts One, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, Seventeen, Eighteen, and Nineteen)**

In Count One, Plaintiff asserts a claim for negligence in, stating that Defendant was negligent and failed "to exercise (reasonable) or (ordinary) care by not retracting the defamatory statements before the police arrived." ECF No. 21 at PageID #: 654.  To state a claim for negligence, Plaintiff must plead and prove: (1) the existence of a legal duty that the defendant owed to the plaintiff, (2) the breach of that duty, and (3) injury that is the proximate cause of the defendant's breach. *Wallace v. Ohio Dep't of Com.*, 96 Ohio St. 3d 266, 274 (2002).  Plaintiff has not established that Defendant owed him a duty to independently investigate law enforcement information and retract an alert.  In addition, Defendant did not cause Plaintiff's alleged injury.  Defendant was merely the transmitter of observed information.  Officers receiving that information made independent decisions on how to respond.  Plaintiff does not state a claim for negligence.  The Court dismisses Count One.

Counts Six, Eleven, and Twelve of the Complaint contain libel and defamation claims. ECF No. 21 at PageID #: 657, 662.  All of these claims are based on Plaintiff's allegation that

(5:23cv2198)

Defendant published false information about him.  Each of these claims require as an element that Plaintiff plead and prove: (1) a false statement; (2) about Plaintiff; (3) published to a third party by Defendant; (4) with the required degree of fault.  *Sygula v. Regency Hosp. of Cleveland E.*, 64 N.E.3d 458. 466 (Ohio App. 8 Dist. 2016).  Defendant, however, did not publish false information.  Defendant's camera conveyed images of Plaintiff's license plate and his vehicle.  That information was true.  Plaintiff objects to the accuracy of the information that was the subject of the alert.  That information was generated by law enforcement, not by Defendant.  Therefore, the Court dismisses Counts Six, Eleven, and Twelve.

Count Seven asserts causes of action for false light invasion of privacy.  ECF No. 21 at PageID #: 658.  The same core reasons that necessitate dismissal of the defamation claims support dismissal of the false light invasion of privacy claim.  One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.  *Murray v. HuffingtonPost.com, Inc.*, 21 F. Supp. 3d 879, 884 (S.D. Ohio 2014) (citing *Welling v. Weinfeld*, 113 Ohio St.3d 464, 473 (2007)).  As stated above, Defendant published only images of Plaintiff's car and license plates and reported to law enforcement personnel that this information matched information on an alert list.  All of the information provided by Defendant  was true.  Moreover, Plaintiff has not presented the Court with factual allegations that plausibly support his assertions that Defendant had actual knowledge that the

16

(5:23cv2198)

information in the alert was false or acted recklessly in that regard.  Accordingly, the Court

dismisses Count Seven.

Plaintiff fails to state a claim for misappropriation of name and likeness in Count Ten.

ECF No. 21 at PageID #: 661.  A defendant is subject to liability when it appropriates to its own

use or benefit the name or likeness of another, and the name or likeness has commercial or other

value. *Roe v. Amazon.com*, 714 F. App'x 565, 568 (6th Cir. 2017).  These claims generally

involve the use of a person's image in a marketing campaign, for commercial gain, without that

person's knowledge or authorization.  Plaintiff does not allege facts plausibly suggesting

Defendant used his name or likeness for its own commercial gain.  In fact, Smith's likeness was

not captured by the LPR camera, and Plaintiff fails to allege facts suggesting that his name was

used by Defendant for its benefit.  In addition, Plaintiff fails to demonstrate that his name has any

commercial value.  More importantly, the image Defendant transmitted was limited to Plaintiff's

car and license plate.  Plaintiff cannot plausibly claim a right to keep private that information

every registered car is required to reveal when driving on public roadways.  Overall, Plaintiff

fails to state a claim for misappropriation of name and likeness.  The Court dismisses Count Ten.

Plaintiff includes claims for intentional and negligent infliction of emotional distress,

Counts Eight and Nine.  To prevail on a claim of  intentional infliction of emotional distress,

Plaintiff must plead and prove that: (1) Defendant intended to cause emotional distress to

Plaintiff or knew or should have known that its conduct would result in serious emotional

distress to Plaintiff; (2) Defendant's conduct was outrageous and extreme and beyond all possible

bounds of decency and was such that it can be considered as utterly intolerable in a civilized

(5:23cv2198)

community; (3) Defendant's conduct was the proximate cause of Plaintiff's psychic injury; and (4) Plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it.  *Kovac v. Superior Dairy, Inc.* 930 F.Supp.2d 857, 870 (N.D. Ohio 2013) (*citing Talley v. Family Dollar Stores of Ohio, Inc.,* 542 F.3d 1099, 1110 (6th Cir.2008)). Conduct giving rise to a claim of intentional infliction of emotional distress must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kovac,* 930 F.Supp.2d at 870 (*quoting Long v. Ford Motor Co.,* 193 Fed. Appx. 497, 503 (6th Cir. 2006)).  Defendant's act of capturing the image of Plaintiff's vehicle and license plate, matching it to data provided to it by law enforcement and then alerting law enforcement to the match is not outrageous and extreme behavior.  Accordingly, the Court dismisses Count Eight.

Negligent infliction of emotional distress is not the watered-down version of intentional infliction of emotional distress.  This claim requires Plaintiff to plead and prove that he suffered extreme emotional distress from witnessing a real or impending danger to another individual. *Stout v. United States*, 721 F. App'x 462, 473 (6th Cir. 2018).  Plaintiff does not plausibly allege that he experienced emotional distress as a result of Defendant's actions that placed another individual in real danger.  The Court dismisses Count Nine.

Plaintiff alleges a claim of unjust enrichment, arguing that Plaintiff conferred benefits through pictures and data gathered through Defendant's camera, and Defendant retained a benefit by selling access to the pictures and data.  ECF No. 21 at PageID #: 666.  Unjust enrichment occurs "when a person 'has and retains money or benefits which in justice and equity belong to

18

(5:23cv2198)

another.'" *Johnson v. Microsoft Corp.*, 2005-Ohio-4985, 106 Ohio St. 3d 278, 834 N.E.2d 791, ¶

20 (citing *Hummel v. Hummel*, 133 Ohio St. 520, 528, 14 N.E. 923, 927 (1938)).  "The rule of

law is that an indirect purchaser cannot assert a common-law claim for restitution and unjust

enrichment against a defendant without establishing that a benefit had been conferred upon that

defendant by the purchaser." *Id.* at ¶ 22.  In *Johnson*, the Court held that no economic

transaction occurred between plaintiff and defendant, so plaintiff could not establish a benefit

had been retained by defendant.  *Id.*  The same is true for Plaintiff and Defendant here.  At base,

no economic transaction occurred between Plaintiff and Defendant.  Plaintiff's claim for unjust

enrichment cannot survive.  Therefore, the Court dismisses Count Seventeen.

Count Eighteen alleges a claim of fraudulent concealment, purporting that "Defendant []

had a duty to disclose material facts to Plaintiff given he was the intended user of the Products."

ECF No. 21 at PageID #: 667.  A fraudulent concealment claim requires

> (1) ... a concealment of a fact when there is a duty to disclose (2) that is material... (3)...
> with knowledge of its falsity or with such utter disregard and recklessness as to whether it
> is true or false that knowledge may be inferred, and (4) with intent to mislead another into
> relying upon it, (5) justifiable reliance, and (6) resulting injury proximately caused by the
> reliance

*Volbers-Klarich v. Middletown Mgt., Inc.*, 2010-Ohio-2057, 125 Ohio St. 3d 494, 929 N.E.2d

434 ¶ 27.  As previously stated, Defendant published only images of Plaintiff's car and license

plates and reported to law enforcement personnel that this information matched information on

an alert list.  All of the information provided by Defendant was true.  No false facts were stated

nor were statements concealed to mislead another.  Plaintiff has not plausibly pled an intention to

mislead another.  Accordingly, the Court dismisses Plaintiff's fraudulent concealment claim,

(5:23cv2198)

Count Eighteen.

Lastly, Plaintiff brings a conversion claim, stating that Defendant wrongfully exercised control over Plaintiffs' information and have not returned it.  ECF No. 21 at PageID #: 669. Generally, a conversion claim is limited to the taking of tangible, personal property.  *Kelley v. Ferraro*, 2010-Ohio-2771, 188 Ohio App. 3d 734, 750, 936 N.E.2d 986, 999.  Intangible property rights may also be subject to conversion.  *Bunta v. Superior VacuPress, L.L.C.*, 2022-Ohio-4363, 171 Ohio St. 3d 464, 218 N.E.3d 838 ¶ 20.  The right needs to be identifiable, and "the court must be able to identify what has been taken."  *Id.* at ¶ 34.  In *Zacchini v. Scripps-Howard Broadcasting Co.*, in which a news program broadcasted plaintiff's 15-second film clip, the Court found there was no intangible asset subject to conversion because it was too difficult to discern what had been "taken."  47 Ohio St. 2d 224, 227, 351 N.E.2d 454, 457 (1976).  "[Was] it the right to perform the act, to view it, to present it on television, to license its filming, or some other right?"  *Id.*  Here, Plaintiff asserts Defendant exercised unlawful control over his property, his personal and private information.  ECF No. 21 at PageID #: 669.  Similar to *Zacchini*, it is difficult to discern what Plaintiff believes has been "taken."  As earlier indicated, his license plate and car image are not privately protected.   Therefore, the Court finds that Plaintiff has not plausibly pled there was tangible or intangible assets subject to conversion.  The Court dismisses Count Nineteen, Plaintiff's conversion claim.

(5:23cv2198)

## V.  Conclusion

For the reasons above, Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 22) is granted.  This action is dismissed pursuant to Federal Civil Procedure Rule 12(b)(6).  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

Defendant's first and second motions to dismiss (ECF No. 7 and ECF No. 11), Defendant's Motion to Stay Discovery (ECF No. 12), Plaintiff's Motion to Strike Flock's Motion to Dismiss and Motion to Stay Discovery (ECF No. 14), Plaintiff's Motion to Strike Affirmative Defenses (ECF No. 26), and Plaintiff's Motion for Court Expert Witnesses (ECF No. 31) are denied as moot.

All case management dates are cancelled.


IT IS SO ORDERED.


  April 15, 2024                   /s/ Benita Y. Pearson
Date                                          Benita Y. Pearson
                                              United States District Judge

21